WILLIAM H. SCHRUM V. STATE OF NEBRASKA.

FILED MARCH 28, 1922.   No. 21913.

1. Criminal Law: PLEA IN BAR. Where, after a plea of not guilty without withdrawing or requesting to withdraw such plea, the defendant filed a plea in bar which was not sworn to by him, *held,* that such plea in bar was invalid, and that the court was justified in overruling it on its own motion, without requiring the state to demur or reply to it.

2. Incest: EVIDENCE OF PROSECUTRIX: CORROBORATION. The facts and circumstances necessary to corroborate the testimony of the prosecuting witness in a prosecution for incest must be proved by other witnesses. Her unsupported testimony that similar offenses occurred prior to the alleged commission of the offense charged is not corroboration of her testimony as to the commission of the principal offense.

3. Instruction No. 8 examined, and *held,* in view of the state of the record, to be prejudicially erroneous.

ERROR to the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Reversed.*

*Jamieson, O'Sullivan & Southard,* for plaintiff in error.

*Clarence A. Davis, Attorney General,* and *Mason Wheeler, contra.*

Schrum v. State.

Heard before MORRISSEY, C. J., ALDRICH, FLANSBURG and ROSE, JJ., BROWN and ELDRED, District Judges.

BROWN, District Judge.

William H. Schrum was convicted in the district court for Douglas county of having committed the crime of incest upon his 12-year-old daughter, Ida Schrum, on July 8, 1920, and was sentenced to serve a term not exceeding 20 years in the penitentiary. From this judgment he has brought the case to this court for review. A number of alleged errors are relied upon in his brief and were presented on oral argument, but we deem it necessary to consider only two of them.

The most important of the errors assigned relates to the giving by the trial court of instruction No. 8, which reads as follows:

"The charge made against the defendant in the information is that he committed the act of incest, that is, had sexual intercourse with the prosecuting witness, on or about July 8, 1920, and this is the specific act charged and of which you are called upon to say whether the defendant is guilty or innocent. Evidence of other acts of like intercourse by the defendant with the prosecuting witness prior to July 8, 1920, has been admitted upon the trial; this evidence is properly admitted but for the purpose only as bearing upon the probability or improbability of the defendant being guilty of the particular act charged in the information, and it is to this extent only you should consider said testimony."

The plaintiff in error, who will for convenience hereafter be designated the defendant, urges that the portion of this instruction beginning with the words "evidence of other acts of like intercourse" specifically authorized the jury, under the evidence in the case, to consider the testimony of the prosecutrix as to other similar acts by the defendant with her as corroboration of her testimony as to the specific act charged in the information.

In order to determine whether or not this contention

is correct, it will be necessary to consider briefly certain portions of the evidence. The record discloses that the defendant secured a divorce from his wife on November 21, 1918, and that on March 10, 1919, she sent their two daughters, Ida and Myrtle, to live with the defendant. The three of them lived together up until July 10, 1920, two days after the alleged act of incest charged in the information, when the mother came and took the girls away. Ida testified that about 6 o'clock on the evening of July 8, 1920, her father sent Myrtle to a grocery store a block and a half away for groceries for supper, and, while a still younger sister, Eugina, aged 6 at the time of the trial, who had recently been sent by their mother to live with them, was in the house and Myrtle was gone, her father took her into the front bedroom and had sexual intercourse with her upon the bed; that during the act Myrtle returned from the store, entered the front door into the living room, off from which the front bedroom opened, passed through the room, stopping only long enough to glance through the partly open door into the bedroom and see her father lying on top of Ida in the act of intercourse, then went on into the kitchen and deposited her groceries, and then returned and started to go into the bedroom as though she had observed nothing; and that while Myrtle was in the kitchen her father got off from her and told her to pull down her clothes, and when Myrtle returned and entered the bedroom the defendant was making a pretense of looking about the room for a tie pin. She also testified that she did not make any complaint, but that her sister told their mother. Over the repeated objections of the defendant, she was permitted to testify further that her father had sexual intercourse with her on numerous occasions, the first time being on Christmas, 1919, and practically every week from then on up to July 8, 1920, sometimes as often as three times a week. She further testified that no one ever saw them in the act of intercourse except her sister, Myrtle, on the one occasion on July 8, 1920. Myrtle testi-

Schrum v. State.

fied substantially the same as her sister with respect to
the occurrence on July 8, except that she said that, after
returning from the kitchen and entering the bedroom, her
father in her presence got off Ida and told Ida to put down
her dress.  She also testified that her little sister, Eugina,
was asleep on the bed in the back bedroom when she went
to the store.  This trial was had early in December, 1920,
and the record discloses that about a month and a half
prior thereto the case had been tried, resulting in a mis-
trial.  It was shown that on this former trial Myrtle had
testified somewhat differently as to the relation between
her movements and what she saw after returning to the
house on July 8.  Both of the girls testified to the fact that,
at the time of the alleged intercourse on July 8, the front
door of the house was open, the screen door was not fast-
ened, and the door of the bedroom in which Ida and her
father were was not closed or locked, but was standing
partly open.  The record discloses that the house in ques-
tion stands with houses on adjoining lots, the nearest be-
ing only 20 feet away, and in a thickly populated portion
of South Omaha.

The defendant denied specifically that he had ever had
or attempted to have sexual intercourse with Ida.  He testi-
fied that he was 41 years old and had lived in the same
house since September, 1907.  He presented seven charac-
ter witnesses, four women and three men, all being married
and having children, and two of the men being business
men in the community.  All but two had lived in the com-
munity ten or twelve years or more, and those two had lived
there about five years, and all had known the defendant
during their residence.  Two of them were the defendant's
nearest neighbors.  All of them testified that the defend-
ant's reputation in the community was that of being a
moral, law-abiding and decent citizen; and one of the
women testified that the defendant's wife had been arrested
twice while she lived there.  The lady who lived next door,
20 feet away, had resided there for over 10 years, had a

grown family, and testified she saw the little girls nearly every day, showing ample opportunity for them to have made complaint.

The defendant contends that the prosecution was the result of ill-feeling and hatred toward him by his divorced wife, and there are evidences in the record that the feeling between them was not good. However that may have been, it is clear that there is no evidence in the record corroborating the testimony of Ida as to any act of intercourse other than that alleged to have occurred on July 8, 1920, and the state so admits in its brief filed in this court. In this state of the record the trial court in the eighth instruction virtually instructed the jury that Ida's uncorroborated testimony as to other acts of intercourse prior to July 8, 1920, should be considered by them "as bearing upon the probability or improbability of the defendant being guilty of the particular act charged in the information;" in other words, that Ida's uncorroborated testimony as to other acts of intercourse might constitute corroboration of her testimony as to the act of July 8. In the sixth instruction the jury had been properly instructed that Ida's testimony as to the principal act charged need not be corroborated by testimony of other witnesses, but that it would be sufficient if she were "corroborated as to material facts and circumstances which tend to support her testimony and from which, together with her testimony as to the principal fact, inference of guilt may be drawn." Nothing would be more natural for the jury to do under these instructions, if they concluded that credence was not to be placed in the corroborating testimony of Myrtle, because of her youth, the discrepancies between her present and her former testimony, or any other reason, than, after listening to the nauseating recital by Ida of her continued and repeated abuse by her father, and being impressed by it, as well they might be, to conclude that they were justified in wholly disregarding the defendant's denials and the evidence of his good reputation for morality and decency

Schrum v. State.

offered by his neighbors who had known him intimately over a long period of years, and to accept Ida's statements of abuse on numerous other occasions as facts from which they might infer the probability that the defendant was "guilty of the particular act charged in the information."

The rule of law with respect to corroboration is no different in a case of incest than it is in a case of rape, and this case is exactly analogous to the case of *Boling v. State,* 91 Neb. 599, except that in the cited case the corroboration of the act charged was possibly more worthy of belief because it was offered by a sister 20 years' old who was not shown to have made previous conflicting or contradictory statements. In the cited case the prosecutrix's unsupported testimony as to a subsequent offense was admitted. The opinion states:

"This evidence was admitted as corroborative evidence tending to corroborate the evidence as to the bed assault, which had been testified to by both the prosecutrix and her elder sister. The court also by two instructions instructed the jury to the same effect. This action is assigned as error. Under the rule stated in *Woodruff v. State,* 72 Neb. 815, and *Leedom v. State,* 81 Neb. 585, proof of the commission of the other offense, by competent testimony, is admissible. We do not wish to be understood as holding otherwise; no thought of doing so. But the question here is: Is the unsupported testimony of the prosecutrix of other criminal acts competent as corroborative evidence? In other words, can the uncorroborated evidence of other offenses, testified to by the prosecutrix alone, corroborate her testimony as to the principal fact? Can she by her unsupported testimony corroborate herself?" The court held that she could not, and reversed the case.

In the case of *Hudson v. State,* 97 Neb. 47, error was assigned because the state was permitted to prove by the prosecutrix that the defendant had had sexual intercourse with her at other times than the one charged in the in-

formation. With respect to this assignment, this court said:

"There can be no doubt that proof of facts and circumstances tending to show other acts of intercourse about the time charged in the information is properly admissible in cases of this nature. *Leedom v. State,* 81 Neb. 585; *Woodruff v. State,* 72 Neb. 815. This evidence, in order to be corroborative in character, should proceed from other sources than from the prosecutrix alone. If a witness testifies that criminal intercourse was had upon one day, the fact that she testifies that a like act was had upon another occasion does not corroborate her testimony. *Boling v. State,* 91 Neb. 599. The evidence was admissible as part of the proof of other acts, but its value as matter of corroboration was for the jury. The court instructed the jury that the prosecuting witness could not corroborate herself by statements of other acts, and thus the interests of the defendant were protected."

In view of the state of the record in this case, we are of the opinion that the giving of the eighth instruction was prejudicially erroneous to the rights of the defendant.

The defendant urges that the summary overruling by the trial court of his plea in bar, filed by him just prior to the beginning of the second trial, without requiring the state to join issues thereon, was error. As a new trial will be necessary, a proper disposition of any question relating to the plea in bar should precede such trial. Therefore this alleged error will be considered. A careful examination of the transcript shows that the action of the trial court was correct and without error for two reasons: In the first place, the plea in bar was not sworn to by the defendant, as is required by section 9094, Rev. St. 1913. In the second place, even if the plea had been sufficient in form, it was filed without requesting or securing permission to withdraw the defendant's plea of not guilty. In the case of *Davis v. State,* 51 Neb. 301, an unsworn plea in bar was filed under similar circumstances, and the court

Sharpe v. Grand Lodge, A. O. U. W.

likewise on its own motion overruled it. On reviewing the alleged error this court held: (1) That the plea was invalid; (2) that the state was under no obligation to demur or reply to it, and that the court was justified in disregarding it and, on its own motion, striking it from the files. To the same effect see *Goddard v. State,* 73 Neb. 739, *Korth v. State,* 46 Neb. 631, and *Marshall v. State,* 6 Neb. 120. We are not unmindful of the case of *George v. State,* 59 Neb. 163, but that case is distinguishable from the case at bar. In that case a motion to make the plea in bar more definite and certain was filed and sustained, issue was joined, and the plea was fully considered and was adjudged to be insufficient in law. However, the rule that a plea in bar may be disregarded, if presented while the plea of not guilty stands, was recognized, but it was held that, under the facts above recited, the plea of not guilty would be considered to have been constructively withdrawn.

Therefore, because of the error committed in giving instruction numbered 8, the judgment of the district court is reversed, and the cause remanded.

REVERSED.

ROSE, J., dissents.