STATE OF NEBRASKA, APPELLEE, V. EDWIN KULA,
ALSO KNOWN AS ED KULA, APPELLANT.

579 N.W. 2d 541

Filed July 2, 1998.    No. S-97-1059.

Mark M. Sipple, of Sipple, Hansen, Emerson & Schumacher, and Adam J. Sipple for appellant.

Charles W. Campbell and Vincent Valentino, Special Prosecutors, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

STEPHAN, J.

Following a jury trial in the district court for Platte County, Edwin Kula was convicted of first degree murder and use of a weapon to commit a felony in connection with the death of Jerry Carlson. On direct appeal, we reversed, and remanded for a new trial. *State v. Kula*, 252 Neb. 471, 562 N.W.2d 717 (1997). Following remand, Kula moved for dismissal of the charges based upon his contention that retrial would violate his right to a speedy trial. In addition, he filed a motion for leave to withdraw his not guilty plea and a plea in bar asserting that retrial would subject him to double jeopardy. Kula also moved for an order reducing the amount of his bond. He now appeals from orders of the district court denying each of these motions. We conclude that we lack jurisdiction to review the order of the district court with respect to Kula's bond. In all other respects, we affirm the judgment of the district court.

## BACKGROUND

The facts and procedural history pertaining to Kula's first trial are summarized in detail in *Kula, supra,* and will not be

repeated here except to the extent necessary to address the issues raised in this appeal.

On June 6, 1995, Kula was indicted on one count of first degree murder and one count of use of a firearm in the commission of a felony related to the shooting death of Carlson. Kula was convicted and, on direct appeal, we reversed, and remanded for a new trial based upon our determination that, because of repeated prejudicial discovery violations by the prosecution, the district court erred in not granting Kula's motion for a continuance during trial and his subsequent motion for a new trial. Our mandate in *Kula, supra,* was issued on May 21, 1997. On July 9, Kula filed (1) a motion to withdraw his plea of not guilty for purposes of entering a plea in bar; (2) a plea in bar, alleging that retrial would violate his constitutional guarantee against double jeopardy; and (3) a motion to dismiss, alleging that retrial would violate his statutory and constitutional rights to a speedy trial. On August 21, an evidentiary hearing was held. At the hearing, Lois Kula, Kula's sister-in-law, testified that prior to his incarceration, Kula was employed, lived with his wife and children, and owned certain personal possessions, but that while Kula was incarcerated, his wife filed for divorce, his son was removed from the home as a result of juvenile court proceedings, he lost his job and belongings, and he was worried and anxious about his children.

During a hearing on September 18, 1997, the district court advised the parties that it was overruling Kula's motion to dismiss and his motion to withdraw his not guilty plea. In separate written orders, the district court found that Kula's constitutional and statutory rights to a speedy trial had not been denied and that Kula "failed to present a fair and just reason to support his request to withdraw his plea of not guilty previously entered . . . and that a retrial . . . as ordered by the Nebraska Supreme Court will not subject him to double jeopardy." During the September 18 hearing, the district court also denied a motion filed by Kula on September 10 seeking a reduction of his bond. Kula perfected this timely appeal from all three orders, and we granted his petition to bypass the Nebraska Court of Appeals.

## ASSIGNMENTS OF ERROR

Restated, Kula contends in his assignments of error that the district court erred in (1) overruling his motion to dismiss on the grounds that his constitutional and statutory rights to a speedy trial had been violated, (2) denying his motion to withdraw his not guilty plea and thereby denying him the right to challenge his retrial on double jeopardy grounds, and (3) denying his motion for reduction of bond.

## STANDARD OF REVIEW

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the trial court. *State v. Marshall*, 253 Neb. 676, 573 N.W.2d 406 (1998); *State v. Stubblefield*, 249 Neb. 436, 543 N.W.2d 743 (1996); *State v. Sinsel*, 249 Neb. 369, 543 N.W.2d 457 (1996).

## ANALYSIS

### SPEEDY TRIAL

Kula contends that the charges against him should be dismissed because he has been denied his constitutional and statutory rights to a speedy trial. The Sixth Amendment to the U.S. Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ." In addition to the federal constitutional protections in this area, Nebraska has created a statutory speedy trial right, which generally provides that a person who has been indicted for a criminal offense must be brought to trial within 6 months of his indictment. Neb. Rev. Stat. § 29-1201 et seq. (Reissue 1995). Kula contends that because of prosecutorial misconduct, the time from the date of his arrest in June 1995 to the date of his motion to dismiss on July 9, 1997, should be considered in determining whether his speedy trial rights have been violated.

Initially, we address the State's contention that we lack jurisdiction to consider this issue because the denial of Kula's motion to dismiss was not a final, appealable order. In *State v. Gibbs*, 253 Neb. 241, 570 N.W.2d 326 (1997), we held that the denial of a motion for absolute discharge based upon a violation of the accused's speedy trial rights was a final, appealable order. See, also, *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331

(1997). We are not persuaded by the State's argument that *Gibbs* was incorrectly decided and thus conclude that we have jurisdiction to determine whether the district court erred in denying Kula's motion to dismiss based upon an alleged denial of his right to a speedy trial.

Kula's statutory right to a speedy trial is defined by § 29-1207, which provides in part:

> (1) Every person indicted or informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in this section.
>
> . . . .
>
> (3) If such defendant is to be tried again following a mistrial, an order for a new trial, or an appeal or collateral attack, such period shall commence to run from the date of the mistrial, order granting a new trial, or the mandate on remand.

In *Gibbs, supra,* we held that under § 29-1207(3), the State was required to try a defendant within 6 months from the date of an order in a postconviction proceeding that vacated his conviction because of a defective information, absent any excludable periods.

Kula's retrial was scheduled to commence on October 21, 1997, which was well within 6 months following the issuance of the mandate in *State v. Kula,* 252 Neb. 471, 562 N.W.2d 717 (1997). Thus, the 6-month period prescribed by § 29-1207(3) had not expired when Kula filed his motion to dismiss on July 9. The district court correctly held that Kula was not deprived of his statutory speedy trial right.

We have recognized that an accused's right to a speedy trial as guaranteed by the Sixth Amendment to the U.S. Constitution and the statutory implementation of that right under § 29-1207 exist independently of each other. *State v. Trammell,* 240 Neb. 724, 484 N.W.2d 263 (1992); *State v. Andersen,* 232 Neb. 187, 440 N.W.2d 203 (1989). In *Trammell* and *Andersen,* we applied the balancing test adopted by the U.S. Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), to determine whether an accused's constitutional right to a speedy trial had been violated. That test involves consideration of four factors: (1) the length of the delay, (2) the reason for the

delay, (3) whether the defendant asserted his speedy trial rights, and (4) whether the defendant suffered possible prejudice. *Id.* With respect to the first of these factors, the Supreme Court stated: "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." 407 U.S. at 530.

Therefore, we must first determine the length of delay to be considered in the analysis of Kula's constitutional speedy trial claim. In *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986), we rejected a contention that the defendant's third trial after the reversal of two prior convictions violated his Sixth Amendment right to a speedy trial. The defendant was arrested on March 27, 1979, and his third trial commenced on March 5, 1984. *Id.*; *State v. Palmer*, 210 Neb. 206, 313 N.W.2d 648 (1981). We computed the length of delay under the first prong of the *Barker* test by applying Neb. Rev. Stat. § 29-1207(3), finding that the third trial began approximately 17 weeks after the return of the mandate following the reversal of the second conviction. We held that this period was constitutionally reasonable and that the defendant's right to a speedy trial was not violated.

Similarly, other courts have specifically declined to consider the entire period of time beginning with the original charge or arrest in computing the length of delay. For example, in *Icgoren v. State*, 103 Md. App. 407, 653 A.2d 972 (1995), the Maryland Court of Special Appeals rejected a contention that the cumulative period between a defendant's arrest, conviction, reversal, retrial, hung jury, mistrial, and second retrial could be combined for purposes of analyzing the defendant's claim that his Sixth Amendment rights had been violated. The court concluded that as a general rule and in the absence of "extraordinary circumstances," the constitutional speedy trial analysis should focus only upon the period between receipt of an appellate mandate reversing a conviction and the subsequent retrial. *Id.* at 420, 653 A.2d at 978. See, also, *Arnold v. McCarthy*, 566 F.2d 1377, 1382 (9th Cir. 1978) (rejecting defendant's contention that court should "lump together the delay incurred by him during his two trials and test the whole period under the stricter speedy trial standards").

Kula argues that the method of computation employed in *Palmer* is inapplicable to this case because Palmer's first and second convictions were not reversed on grounds of prosecutorial misconduct. He contends that the length of delay in the present case should be computed from the date of his initial incarceration on about June 5, 1995, until the filing of his motion to dismiss on July 9, 1997, because prosecutorial misconduct formed the basis for our reversal of his conviction in *State v. Kula*, 252 Neb. 471, 562 N.W.2d 717 (1997). In support of his argument, Kula relies on *State v. Del Gaudio*, 445 So. 2d 605 (Fla. App. 1984), and *Miketa v. Cardonne*, 549 So. 2d 1158 (Fla. App. 1989), which involved speedy trial determinations under Florida's rules of criminal procedure. In *Del Gaudio*, the court refused to impose dismissal of criminal charges as a sanction for the State's failure to comply with discovery orders where the requested information was ultimately furnished to the defendants and they were not prejudiced in the preparation of their defense. However, the court noted that where a prosecutor fails to respond to discovery requests in a timely fashion and thus forces the defendant to request a continuance, the additional time may be charged to the State for speedy trial purposes. Without mentioning *Del Gaudio*, the same court in *Miketa* held that a continuance necessitated by the State's failure to make timely discovery should not have been charged to the defendants for speedy trial purposes because they did not request it and the State "was clearly responsible for all trial delays in the case." *Miketa*, 549 So. 2d at 1159. As a result, the defendants were entitled to discharge because they had not been tried within the period specified under Florida's rules of criminal procedure. We note that in *State v. Brown*, 527 So. 2d 209 (Fla. App. 1988), the same court characterized the statement in *Del Gaudio* as dicta and indicated "grave doubt as to the very existence of a continuance 'charged' to the opposite party under the present speedy trial rule . . . ." *Id.* at 210.

Neither *Del Gaudio* nor *Miketa* examined the right to a speedy trial in a procedural context similar to that of the present case, where the issue is raised with respect to retrial after a conviction has been reversed on appeal because of prosecutorial misconduct. This was the procedural posture in *Pelletier v.*

*Warden,* 32 Conn. App. 38, 627 A.2d 1363 (1993), where the defendant's first conviction was reversed because of an improper summation by the prosecutor and he was convicted again following a second trial. In a petition for writ of habeas corpus, Pelletier alleged that his attorney during the second trial was ineffective because he did not take steps to protect Pelletier's constitutional right to a speedy trial. In addressing this claim, the court noted that because the second trial occurred more than 7 years after Pelletier's arrest, it was necessary to determine "whether the time between his arrest and the reversal of his first conviction should also be factored into our speedy trial analysis regarding his second trial." *Id.* at 53, 627 A.2d at 1371. The court concluded:

> Because the constitutional right to a speedy trial is intended to prevent delay that is "purposeful or oppressive" [citation omitted] the reason for the additional delay due to the necessity of a retrial is critical to our resolution of this inquiry. Because we have already concluded that there is nothing in the record to suggest that the petitioner's first trial did not proceed with anything but orderly expedition, it necessarily follows, in our view, that the period between the petitioner's arrest and his first conviction should not be counted against the state in examining the delay incident to the petitioner's second trial, unless the trial error that necessitated the second trial occurred for the purpose of delay.

(Emphasis omitted.) *Id.* Finding "nothing in the record to suggest that the prosecutorial misconduct that deprived the petitioner of a fair trial in that first prosecution was in any way motivated by a desire to cause additional delay or otherwise impair the petitioner's speedy trial rights," *id.* at 54, 627 A.2d at 1371-72, the court therefore limited its speedy trial analysis to the 18-month period between reversal of the first conviction and retrial and determined that there had been no violation of Pelletier's constitutional right to a speedy trial which his counsel should have asserted. See, also, *State v. McCormack,* 28 Wash. App. 65, 622 P.2d 1276 (1980) (holding that following mistrial, defendant's speedy trial rights were not violated by

retrial absent deliberate prosecutorial misconduct designed to circumvent right to speedy trial).

We find the reasoning in *Pelletier* persuasive as to the Sixth Amendment issue presented in this case. Kula's first trial began 5 months and 3 weeks after his indictment and arrest. While prosecutorial misconduct deprived Kula of a fair trial for the reasons stated in *State v. Kula*, 252 Neb. 471, 562 N.W.2d 717 (1997), we cannot conclude from the record that such misconduct was intended to delay the proceedings or deprive Kula of his constitutional right to a speedy trial. In considering Kula's Sixth Amendment claim, we therefore consider only the period from the entry of our mandate in *Kula, supra*, until the filing of Kula's motion to dismiss, a period of 49 days. Kula did not allege nor does the record reflect any improper delay tactics by prosecutors during this period. While it is true that Kula has undergone personal hardship as a result of his incarceration, the same could be said for any incarcerated defendant whose conviction is reversed because of trial error that necessitates retrial. We hold that a 49-day delay is insufficient to trigger the necessity to consider the other factors listed in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). Thus, we conclude that the district court did not err in finding that Kula's Sixth Amendment right to a speedy trial was not violated.

### DOUBLE JEOPARDY

Kula's plea in bar is based upon his contention that because of "prosecutorial misconduct, bad faith conduct and overreaching" by prosecutors during his first trial, retrial would subject him to double jeopardy in violation of his state and federal constitutional rights. We initially address the State's contention that we lack jurisdiction to address this issue.

It is clear that a ruling denying a plea in bar on double jeopardy grounds is a final, appealable order because it is a special proceeding that affects a substantial right. *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996); *State v. Milenkovich*, 236 Neb. 42, 458 N.W.2d 747 (1990). However, it is also well-settled law that a defendant who has entered a plea of not guilty must obtain leave of the court to withdraw that plea before asserting a plea in bar on double jeopardy grounds. *Schrum v.*

*State*, 108 Neb. 186, 187 N.W. 801 (1922); *George v. State*, 59 Neb. 163, 80 N.W. 486 (1899). In this case, the district court denied Kula's motion for leave to withdraw his not guilty plea based upon its determination that he "failed to present a fair and just reason to support his request to withdraw his plea of not guilty previously entered to such charges, and that a retrial . . . will not subject him to double jeopardy." The State contends that because a motion to withdraw a prior plea is not included within the provisions of Neb. Rev. Stat. § 29-1817 (Reissue 1995), which authorizes a plea in bar, its denial is not an order in a special proceeding affecting a substantial right over which we have appellate jurisdiction.

It is significant that in denying Kula's motion for leave to withdraw his prior plea, the district court ruled on the merits of his contemporaneously filed plea in bar by making a specific finding that retrial would not constitute double jeopardy. In *George v. State, supra*, we held that while a trial court is free to disregard a plea in bar presented while a plea of not guilty remains on the record, the trial court's act of ruling on the merits of the plea in bar was appealable, notwithstanding the fact that the prior plea had not been withdrawn. Because the district court addressed the merits of Kula's plea in bar in denying him leave to withdraw his plea, we conclude that the order was appealable.

The Double Jeopardy Clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *State v. McBride*, 252 Neb. 866, 567 N.W.2d 136 (1997); *State v. Wolf*, 250 Neb. 352, 549 N.W.2d 183 (1996); *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d 83 (1996). In *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978), the U.S. Supreme Court held that double jeopardy bars retrial when a conviction is reversed because the evidence was insufficient to sustain a verdict of guilty, but not when reversal is due to trial error. The Court explained:

> [R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such,

> it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.,* incorrect receipt or rejection of evidence, incorrect instructions, *or prosecutorial misconduct.* When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.

(Emphasis supplied.) 437 U.S. at 15. Relying on *Burks*, we have held that reversal based upon trial error does not bar a retrial of a criminal defendant. *State v. Williams*, 247 Neb. 931, 531 N.W.2d 222 (1995).

In *State v. Kula*, 252 Neb. 471, 562 N.W.2d 717 (1997), we rejected the contention that the district court erred in overruling Kula's motions to dismiss based on insufficiency of the evidence and found that under the applicable standard of review, the evidence was sufficient to sustain the conviction, despite the fact that it was entirely circumstantial. However, we concluded that because of the State's repeated prejudicial discovery violations, the district court erred in failing to grant Kula's motion for continuance prior to opening statements and his motion for new trial following verdict. Because of this trial error, we reversed Kula's conviction and remanded the cause for a new trial.

Kula's plea in bar is based upon a contention that the prosecutorial misconduct, which formed the basis of our reversal and remand in *Kula, supra*, was so egregious as to deprive him of his right to a fair determination of his guilt or innocence in his first trial and, therefore, that a new trial would violate his double jeopardy rights. He relies in part on *Oregon v. Kennedy*, 456 U.S. 667, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982), in which the Supreme Court held that where a defendant's motion for mistrial based upon prosecutorial misconduct is granted, double jeopardy bars retrial when "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." 456 U.S. at 679. In formulating this rule, the Court specifically stated that notwithstanding its language in *United States v. Jorn*, 400 U.S. 470, 91

S. Ct. 547, 27 L. Ed. 2d 543 (1971), and *United States v. Dinitz*, 424 U.S. 600, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976), suggesting a broader rule, "[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion . . . does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." 456 U.S. at 675-76. We adopted this rule in *State v. Munn*, 212 Neb. 265, 322 N.W.2d 429 (1982). See, also, *State v. Cisneros*, 248 Neb. 372, 535 N.W.2d 703 (1995); *State v. Bostwick*, 222 Neb. 631, 385 N.W.2d 906 (1986).

Some courts have held that *Kennedy* applies only to cases where a mistrial is in fact declared and that it imposes no double jeopardy restriction upon retrial following appellate reversal of a conviction because of prosecutorial misconduct. *U.S. v. McAleer*, 138 F.3d 852 (10th Cir. 1998); *United States v. Singleterry*, 683 F.2d 122 (5th Cir. 1982). Other courts have recognized that while there are valid arguments supporting the extension of the *Kennedy* rule to reversal of convictions on grounds of prosecutorial misconduct, retrial is not barred where the element of specific intent to "goad" the defendant into moving for a mistrial is absent. *Greyson v. Kellam*, 937 F.2d 1409, 1415 (9th Cir. 1991). See, *United States v. Singer*, 785 F.2d 228 (8th Cir. 1986); *United States v. Curtis*, 683 F.2d 769 (3d Cir. 1982). Consistent with the latter cases, we need not decide whether *Kennedy* should be extended to appellate reversals due to prosecutorial misconduct because the *Kennedy* test would not be met in the present case even if it were applicable. Kula did not move for a mistrial during his first trial, and he has not specifically alleged nor does the record establish that the prosecutorial misconduct which formed the basis for reversal of his conviction was motivated by a specific intent to goad him into moving for a mistrial. Thus, Kula's retrial is not barred under the Supreme Court's interpretation of the Double Jeopardy Clause of the U.S. Constitution.

Kula urges that we adopt the reasoning of the Pennsylvania courts, which have broadened the *Kennedy* rule on state constitutional grounds. In *Com. v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992), the Pennsylvania Supreme Court considered the ques-

tion of whether double jeopardy barred retrial of a defendant whose conviction was reversed on appeal because of the prosecution's deliberate failure to disclose exculpatory evidence. Some of the misconduct was not discovered until after the defendant's direct appeal. Recognizing that "some courts would not view the prosecutorial misconduct in this case as rising to the level of subversion of constitutional rights," 615 A.2d at 325, under *Kennedy*, the court held that regardless of the federal standard, the double jeopardy clause of the Pennsylvania Constitution "prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." *Id.* However, we have consistently held that the double jeopardy clause of the Nebraska Constitution provides no greater protection than that of the U.S. Constitution. *State v. Howell*, 254 Neb. 247, 575 N.W.2d 861 (1998); *State v. Stubblefield*, 249 Neb. 436, 543 N.W.2d 743 (1996); *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996). Therefore, the rationale of the Pennsylvania case is inapplicable. We conclude that the district court correctly held that retrial pursuant to our mandate in *State v. Kula*, 252 Neb. 471, 562 N.W.2d 717 (1997), would not subject Kula to double jeopardy.

## BOND

Kula's final assignment of error asserts that the district court abused its discretion by denying his motion for a reduction of his bond. The three types of final orders which may be reviewed on appeal under the provisions of Neb. Rev. Stat. § 25-1902 (Reissue 1995) are (1) an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered. *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331 (1997); *State v. Gibbs*, 253 Neb. 241, 570 N.W.2d 326 (1997). Kula offers no authority establishing that a denial of a request to reduce bond prior to retrial falls into any of these

categories. Furthermore, we have held that the appropriate form of relief from denial of a motion to reduce bail claimed to be excessive is by habeas corpus. *State v. Harig*, 192 Neb. 49, 218 N.W.2d 884 (1974). See, also, *Kennedy v. Corrigan*, 169 Neb. 586, 100 N.W.2d 550 (1960); *In re Scott*, 38 Neb. 502, 56 N.W. 1009 (1893). Therefore, we conclude that we lack jurisdiction to consider this assignment of error.

## CONCLUSION

For the reasons stated, the district court did not err in determining that retrial pursuant to our mandate in *State v. Kula*, 252 Neb. 471, 562 N.W.2d 717 (1997), would not violate Kula's statutory or constitutional rights to a speedy trial or subject him to double jeopardy. We therefore affirm the judgment of the district court and remand the cause for further proceedings consistent with this opinion and our mandate in *Kula, supra*.

AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS.