STATE OF NEBRASKA, APPELLEE,
v. JOSEPH W. ALCARAZ, APPELLANT.
590 N.W.2d 414

Filed March 16, 1999.   No. A-98-677.

Steven J. Lefler, of Lefler & Mullen Law Firm, for appellant.

Don Stenberg, Attorney General, and David T. Bydalek for appellee.

IRWIN, Chief Judge, and HANNON and SIEVERS, Judges.

SIEVERS, Judge.

## BACKGROUND

Joseph W. Alcaraz, along with three other individuals, was charged by information on July 1, 1996, with first degree forcible sexual assault. Both Alcaraz and the State allege that this charge was amended to first degree sexual assault approximately 2 years later, although the record does not contain an amended information. Alcaraz was arraigned in the district court for Douglas County, Nebraska, on July 2 and pled not guilty. In an order filed November 22, the district court consolidated the trials of Alcaraz, Fred A. Graham, Pedro Mancilla, and John Blazevich (collectively codefendants) on the State's motion.

At a hearing on December 10, 1996, Alcaraz waived his right to a speedy trial. The district court determined that Alcaraz had discussed the waiver with counsel and found beyond a reasonable doubt that Alcaraz "freely, voluntarily, knowingly, intelligently and understandingly" gave up his right to a trial within 6 months. On August 27, 1997, Alcaraz appeared with counsel and his codefendants for a *Frye* hearing. See *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

On December 7, 1997, counsel for each codefendant received by mail some medical records concerning the alleged victim along with the names of 12 additional witnesses the State sought to endorse. In a hearing on December 8, counsel for all four defendants moved to strike the witnesses. Counsel for the three codefendants moved to continue the trial, citing lack of time to properly prepare their defense due to the State's late disclosure. Counsel for Alcaraz refused to join in the motion for a continuance and stated that "my client's the only one of the

group that's still in jail" and indicated that Alcaraz wanted to proceed to trial "on Monday." (The hearing of December 8 was on a Monday so we assume that Alcaraz' attorney was referencing Monday, December 15, 1997. However, there is also a reference on December 8 to trial having been set on "the 12th." These references aside, we cannot find a definitive trial setting in the record.) The following discussion ensued:

[Deputy County Attorney]: Well, Your Honor, I'm going to object to that because we already had a motion, and you ruled on that, that these were going to be all joined. And for the purposes of the victim not having to go through this a number of times, I would oppose that, any separate trials. We've already had that hearing.

THE COURT: How about that, Steve?

[Alcaraz' counsel]: That's a legitimate point. It's just my guy is — again, one of the reasons why I think we set it fairly quickly was to accommodate the fact that my client is still in jail.

[Deputy County Attorney]: But he's not in jail because of this. He got new charges; isn't that correct?

[Alcaraz' counsel]: That is correct.

THE COURT: And he's going to be sentenced?

[Alcaraz' counsel]: He's going to be sentenced on Tuesday.

. . . .

THE COURT: What's that charge?

. . . .

[Alcaraz' counsel]: Attempted robbery, that's right.

THE COURT: He's probably going to do time. It's not my case, is it?

[Alcaraz' counsel]: It is.

THE COURT: Oh, it is?

[Alcaraz' counsel]: Yes, sir, it is. Ironically enough.

THE COURT: I think what I'm going to do is say that Mr. Alcaraz will be tried when everybody else is tried. Anything more?

Trial was continued until July 27, 1998. Both parties assert that trial was delayed to this date due to the deputy county attorney's pregnancy. At the time of the December 8, 1997, hearing, the

deputy county attorney said she was 8 weeks from delivering her baby. In discussing the continuance, she stated that her schedule would indicate a summer trial.

Alcaraz filed a motion to dismiss on May 4, 1998, alleging that he had not been prosecuted under "the State Statute or the United States Constitution in a timely fashion." At a hearing on May 29, counsel for Alcaraz stated that the basis for his motion to dismiss was the district court's refusal to separate Alcaraz' trial from that of his codefendants at the hearing on December 8, 1997. Alcaraz' motion to dismiss was overruled. He appeals to this court.

## ASSIGNMENTS OF ERROR

Alcaraz argues on appeal that the district court erred (1) in overruling his motion to dismiss and (2) in not finding that the prosecution failed to disclose evidence in a timely manner, which resulted in a continuance of the trial.

## STANDARD OF REVIEW

■ As a general rule, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. *State v. Murphy*, 255 Neb. 797, 587 N.W.2d 384 (1998).

## ANALYSIS

Alcaraz contends that the charges against him should be dismissed because he has been denied his constitutional and statutory rights to a speedy trial. The Sixth Amendment to the U.S. Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ." In addition to the federal constitutional protections in this area, Nebraska has created a statutory speedy trial right, which provides that a person who has been charged for a criminal offense must be brought to trial within 6 months of the filing of the information or indictment. Neb. Rev. Stat. § 29-1207 (Reissue 1995).

Alcaraz argues that although he waived his right to a speedy trial on December 10, 1996,

> the waiver of speedy trial by a defendant does not allow
> the prosecution an infinite period of time to bring that

defendant to trial. The Statute was put into place to accommodate the parties and allow them a **reasonable** period of time outside the six months requirement to prepare their case.

Brief for appellant at 9. Alcaraz contends that this **"reasonable** period of time" elapsed on December 8, 1997, when, despite Alcaraz' offer to go to trial the following "Monday," the court continued the trial with respect to all codefendants for another 7 months. Alcaraz argues that when his attorney went on record in December 1997 as being opposed to any further continuances, he was "reasserting his rights to a speedy trial." Brief for appellant at 12.

■ An accused's right to a speedy trial as guaranteed by the Sixth Amendment to the U.S. Constitution and the statutory implementation of that right under § 29-1207 exist independently of each other. *State v. Kula*, 254 Neb. 962, 579 N.W.2d 541 (1998). Thus, there are two prongs to the analysis.

*Statutory Right to Speedy Trial.*

■ We first address Alcaraz' statutory right to a speedy trial. Section 29-1207 provides that every person charged with a criminal offense shall be brought to trial within 6 months. For reasons not relevant to our discussion here, the time may be extended. Alcaraz asserts that the 6-month clock began running again, despite his earlier waiver of December 10, 1996, when on December 8, 1997, he "reasserted" his speedy trial rights by opposing any further continuances. How a defendant's previous waiver of his right to a speedy trial can be revoked or terminated was decided by the Nebraska Supreme Court in *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989). The *Andersen* court held that a defendant could terminate his waiver of a speedy trial "by filing a written request for trial with the clerk of the court in which the defendant is to be tried. The defendant shall serve a copy of the written request for trial upon the prosecutor." *Id.* at 195, 440 N.W.2d at 211. There is no evidence in the record that Alcaraz filed a written request or served it as required. Thus, his Nebraska statutory right to a speedy trial was not violated because he waived it on December 10, 1996, and failed to revoke such waiver in the manner required by

*Andersen.* Thus, we turn to the general constitutional right to a speedy trial.

*Constitutional Right to Speedy Trial.*

Determining whether a defendant's federal constitutional right to a speedy trial has been violated requires a balancing test in which the courts must approach each case on an ad hoc basis. This balancing test involves four factors: (1) length of the delay, (2) reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *State v. Turner*, 252 Neb. 620, 564 N.W.2d 231 (1997). None of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. Rather, the factors are related and must be considered together with other circumstances as may be relevant. *State v. Andersen, supra.* See, also, *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). Moreover, the right to a speedy trial is not denied where the delay is satisfactorily explained by the government and the defendant was brought to trial as soon as was reasonably possible. *State v. McNitt*, 216 Neb. 837, 346 N.W.2d 259 (1984).

In the instant case, the 2-year delay between the filing of the information on July 1, 1996, and the date set for trial, July 27, 1998, was significant. But, we do not think that the entire 2 years is the determinative timeframe in our balancing analysis. Alcaraz waived his right to a speedy trial on December 10, 1996, and we think there must be consistency between state and federal rights. In other words, Alcaraz cannot have the federal speedy trial clock running during a period when he has expressly waived his state statutory right.

In *Barker v. Wingo*, 407 U.S. at 531-32, the Supreme Court stated:

> Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. . . . We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

Alcaraz did not "reassert" his right to a speedy trial until December 8, 1997, approximately 1½ years after the information was filed against him. Trial was continued until July 27, 1998. Barring extraordinary circumstances, none of which appear in this record, a defendant's constitutional right to a speedy trial is not denied when the defendant does not want a speedy trial. See *Barker v. Wingo, supra.* It was only on December 8, 1997, when he resisted the motion to continue and said he would go to trial "on Monday," that Alcaraz actively "asserted" his speedy trial rights and "revoked" his waiver for purposes of his federal constitutional rights. See *State v. Lee,* 185 Neb. 184, 174 N.W.2d 344 (1970) (holding that defendant's resistance to continuance may be viewed as assertion of his constitutional speedy trial rights).

Therefore, for constitutional speedy trial purposes, the assertion of Alcaraz' right occurred on December 8, 1997—7½ months before the newly scheduled trial date of July 27, 1998. Thus, we analyze the matter from the standpoint of a 7½-month delay. While it is not a greatly excessive time period, it is longer than the 6 months provided for by § 29-1207, which provides some measure of guidance. Therefore, we find that when balancing the factors of length of delay and assertion of the right, we must come down on Alcaraz' side of the scale.

We now turn to the reason for the delay. The record demonstrates that several factors operating together delayed the trial after Alcaraz "asserted" his speedy trial rights on December 8, 1997. The first factor generating a delay was that the crime was an alleged gang rape which resulted in the consolidation of the four defendants' cases for trial. On December 8, three of the four defendants moved for a continuance of the trial on various grounds, principally, to do more discovery of the witnesses which the State had just disclosed. The trial judge reasoned that if counsel for the three codefendants said they were "surprised" by the new witnesses and were not ready, he was "hardpressed" to disagree. Alcaraz' counsel did not join in the motion to continue. Once the continuance was granted to the three codefendants, the trial court had to either continue the trial as to all defendants, or sever Alcaraz from the proceedings and try him separately.

The court accepted the argument of the State that the victim should not have to undergo the trauma of a trial more than once. The court's refusal to grant Alcaraz a separate trial was done to protect the victim's rights. The avoidance of multiple trials in a sexual assault case is a valid reason for a continuance. We note that the delay caused by nonseverance of the codefendants' trial, at least under the Nebraska statute, is an excusable delay when there is good cause for not granting a severance. See § 29-1207(4)(e). Moreover, to deny the continuance to the three codefendants who wanted to do additional discovery before trial in order to accommodate Alcaraz' demand for an immediate trial creates another set of issues and complications, which we need not tackle here.

A second factor generating delay was the pregnancy of the deputy county attorney in charge of the case, who was due in early February 1998. The record shows that the deputy county attorney had been involved in the case continuously since at least November 1996. Delaying a trial because of the deputy county attorney's pregnancy is not inappropriate. However, we observe that the record is insufficient to support the need for a delay to July 27, 1998, given that the baby was to be born in late January or early February 1998. While a period of maternity leave can be presumed, the record is missing any details as to why a delay of 7½ months was necessary, given that there was obviously a fair block of time for discovery matters before counsel's baby was due. Additionally, there is no evidence about the status of the trial court's calendar. A more complete record should have been made on these matters. We caution that at some point the need to get a particular defendant tried within a constitutional timeframe would obviously override the fact that a particular prosecuting attorney was pregnant.

Therefore, with respect to reasons for the delay, we find that there were good and sufficient reasons for the delay but that the record fails to prove that the entire delay from mid-December 1997 to late July 1998 was completely necessary or reasonable. Thus, in our constitutional balancing test, we find that the factor "reason for the delay" favors the State, but because the length of the delay is not established by this record to be fully reasonable, that factor favors Alcaraz.

We consider a third factor for delay which overlaps with Alcaraz' allegation that the reason his trial was continued was because of the State's "last minute discovery," brief for appellant at 12, and he assigns error to the district court in failing to find that the prosecution did not disclose evidence in a timely manner, which thereby "result[ed] in a continuance" of his trial. While the continuance can at least in part be blamed on the prosecution's endorsement of 12 additional witnesses shortly before trial, Alcaraz was not prejudiced by the late endorsement of witnesses, unless the continuance itself was prejudicial. This conclusion naturally follows from the fact that Alcaraz' attorney said he and his client were ready and willing to go to trial the following Monday.

Obviously, our balancing of the first three factors fails to generate a clear-cut answer. Thus, we turn to the final factor in the balancing test, prejudice to the defendant, which the authority suggests be looked at with particularity. *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

Prejudice should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. The U.S. Supreme Court has identified three such interests: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused, and (3) to limit the possibility that the defense will be impaired. *Barker v. Wingo, supra*. In the instant case, the record demonstrates that prejudice, if any, was minimal. Alcaraz argues that he suffered prejudice as a result of the continuance because he was in jail awaiting trial. However, the record shows that Alcaraz was incarcerated on a new charge at the time of the December 8, 1997, hearing, rather than being held on the first degree forcible sexual assault charge. Also, he was scheduled to be sentenced by the same trial judge within days for attempted robbery. The record from the hearing on the continuance suggests that this sentencing would result in imprisonment, but we do not know that for certain. We recall that at the December 1997 hearing, it was clearly suggested that Alcaraz would be imprisoned on the charge for which he was to be sentenced in a matter of days. When Alcaraz' motion for discharge on speedy trial grounds was heard on May 29, 1998, there was no showing that he had

escaped this prison sentence, although on that date, the deputy county attorney said that Alcaraz was "not incarcerated at this time." In short, the record fails to prove that Alcaraz was subjected to oppressive pretrial incarceration, rather, it demonstrates that he was in jail because of another charge and a conviction for attempted robbery, but by May 29, 1997, he was no longer in jail. There is no evidence of prejudice resulting from oppressive pretrial incarceration, nor was there any evidence whatsoever of prejudice in the other two categories mentioned by the court in *Barker v. Wingo, supra.*

Alcaraz failed to show that he was prejudiced by the delay between mid-December 1997 and late July 1998. There is no evidence that a key witness for the defense was ill or threatening to leave the state, that the memories of witnesses were fading, or that his defense was otherwise prejudiced by the delay.

When we balance the four factors to determine whether there has been a denial of the constitutional right to a speedy trial, we find that in regard to the first three factors, some evidence favors the State and some favors Alcaraz, but there is no evidence to show a clear-cut denial of Alcaraz' constitutional right to a speedy trial. However, we see the fourth factor, prejudice, as most important in this particular case, and as previously mentioned, evidence of prejudice is completely lacking. After weighing in this last key factor, the entire balancing process favors the State. Therefore, we hold that Alcaraz was not deprived of his right to a speedy trial under the federal Constitution. We affirm the action of the district court denying Alcaraz' motion to dismiss.

AFFIRMED.