STATE OF NEBRASKA, APPELLEE, V.
ROBERT WARD, APPELLANT.
597 N.W. 2d 614

Filed July 30, 1999.    No. S-98-630.

Dennis R. Keefe, Lancaster County Public Defender, and Kristi J. Egger Brown for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Robert Ward was convicted by the district court, pursuant to a jury verdict, of sexual assault of a child in violation of Neb. Rev. Stat. § 28-320.01 (Cum. Supp. 1996). Ward appeals, claiming that he was denied his right to a speedy trial under the Nebraska speedy trial statutes, Neb. Rev. Stat. §§ 29-1207 through 29-1209 (Reissue 1995); Neb. Const. art. I, § 11; and the 6th and 14th Amendments to the U.S. Constitution. For the reasons stated herein, we affirm the judgment of the district court.

## FACTUAL BACKGROUND

On April 28, 1997, an information was filed in the district court charging Ward with a violation of § 28-320.01. On April 30, Ward filed, through counsel, motions for discovery and to allow the taking of depositions. The motions were sustained on May 19, and 30 days were allowed for the taking of depositions.

On August 26, the case was set for trial to the September 8 jury term.

The matter came on for docket call on October 16, 1997. The prosecuting attorney averred that the State was ready for trial. The trial was set for October 27.

On October 30, 1997, Ward filed a motion to discharge the charge against him because he had not been tried within 6 months of the filing of the information. The record on appeal does not reflect why the trial did not begin on October 27 as originally scheduled. The State argued, in response, that the trial court should exclude, for speedy trial purposes, the time between the filing of Ward's motion to take depositions and the end of the 30-day period allowed for that purpose.

The prosecutor also expressed his concern:

I know what is going to happen is, you are going to over-rule the motion for discharge and then [the defense] will file a notice of appeal and I'll have to call up an eleven year old boy and tell him, sorry, after you have been ready for this all week, thinking about it and worrying about it.

After some discussion of the motion to discharge, the following colloquy took place:

[PROSECUTOR]: . . . I, believe it or not, thought of something while this was going on and I guess my request at this time would be for the court to take Mr. Ward's motion to discharge under advisement and allow the trial to begin tomorrow.

THE COURT: And you think I can do that?

[PROSECUTOR]: I don't know why not. I think there is plenty of time to appeal that. That is how it has always been appealed, is following a conviction. Up to this point, and until you have ruled on his motion to discharge, he can't appeal it.

Defense counsel objected that Ward had a right to appeal the denial of his speedy trial motion before trial. Defense counsel stated:

It is not, I believe, a question as to whether or not the court should take under advisement a claim to which the defendant has a constitutional right to raise. He has a statutory and constitutional right to speedy trial. If the trial is not

brought within that six month time period, then the defendant is entitled to a mandatory discharge without any trial, without the burden on the defendant of having to sit through the trial and having to do that.

Ultimately, the court determined:

I am going to take the motion under advisement and we will begin this trial at 10 o'clock. I do that for a number of reasons, not necessarily in any order of importance. . . .

. . . [B]y taking the matter under advisement, Mr. Ward's rights are completely reserved and it seems to be it's the right thing to do under these circumstances. While it is true that the result of that decision means that Mr. Ward will have a trial, that were I to determine later or appellate court trial [sic] determine he ought not to have, that is the only hardship and in balancing all of the factors, I need to consider not only the State's right to a fair trial to have witnesses whose memories are not impeded by the further passage of time, particularly because it is my understanding that there is a child victim in this case that has got to be under some stress and this court's own desire to efficiently and effectively run the system, so to speak. It preserves all of that and that is why I have decided it's the right thing to do. So, the matter will remain under advisement and I will see you back here at 10 o'clock.

Prior to trial, Ward filed a notice of appeal from the "denial" of his speedy trial motion. Defense counsel stated:

I would advise the court that the reason for filing this notice of appeal is based on the court's decision to take the matter under advisement of the motion to discharge for speedy trial grounds and the court taking that matter under advisement, basically, constitutes a denial of the defendant's motion to discharge on speedy trial grounds. . . .

. . . .

The same effect or the same result is present now when the court is basically not ruling on the motion, that the court is taking the matter under advisement and basically forcing the defendant to have a trial before that issue is

resolved is in effect denying the defendant the right to have his motion ruled upon before trial.

Ward's appeal was dismissed by the Nebraska Court of Appeals for lack of a final, appealable order. *State v. Ward*, 6 Neb. App. xliv (case No. A-97-1146, Jan. 26, 1998). This court denied Ward's petition for further review. *State v. Ward*, 254 Neb. xxviii (case No. A-97-1146, March 18, 1998). The mandate of the Court of Appeals was issued on March 24, 1998, and was received by the district court on March 27. The record does not reflect when the district court first spread the mandate on the record or otherwise acted on the mandate.

Trial commenced in the district court on April 13, 1998. Ward's motion to discharge was renewed and again taken under advisement. Ultimately, the jury found Ward guilty as charged, and he was sentenced to a term of incarceration of not less than 2 nor more than 4 years, with credit for time served. Prior to sentencing, the trial court finally denied Ward's motion to discharge on speedy trial grounds.

## ASSIGNMENTS OF ERROR

Ward assigns that the district court erred in (1) taking under advisement the motion to discharge until the trial was over, (2) overruling his motion to discharge, and (3) finding that the State produced sufficient evidence of his guilt.

## STANDARD OF REVIEW

■ As a general rule, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. *State v. Kinser*, 256 Neb. 56, 588 N.W.2d 794 (1999); *State v. Murphy*, 255 Neb. 797, 587 N.W.2d 384 (1998).

■ In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Larsen*, 255 Neb. 532, 586

N.W.2d 641 (1998); *State v. Hill*, 254 Neb. 460, 577 N.W.2d 259 (1998).

## ANALYSIS

### TRIAL COURT'S REFUSAL TO RULE ON SPEEDY TRIAL MOTION

We first analyze the question whether the trial court erred in refusing to promptly rule on Ward's motion to discharge, instead taking that motion under advisement until the trial was complete. Ward's motion to discharge was filed pursuant to § 29-1208, which affords a mechanism for enforcement of the statutory right to a speedy trial conferred by § 29-1207. See *State v. Kinser, supra*.

We held in *State v. Gibbs*, 253 Neb. 241, 570 N.W.2d 326 (1997), that a ruling on a motion for absolute discharge based upon an accused criminal's nonfrivolous claim that his or her speedy trial rights were violated is a ruling affecting a substantial right made during a special proceeding and is therefore final and appealable. Our decision in *State v. Gibbs* was handed down 6 days prior to the filing of Ward's motion for discharge in the present case.

The basis for our holding in *State v. Gibbs*, 253 Neb. at 245, 570 N.W.2d at 330, was our determination that "the rights conferred on an accused criminal by §§ 29-1207 and 29-1208 would be significantly undermined if appellate review of nonfrivolous speedy trial claims were postponed until after conviction and sentence." See, also, *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331 (1997).

We clearly held in *State v. Gibbs, supra*, and *State v. Jacques, supra*, that an accused has the right to appeal, prior to trial, the denial of an accused's motion for discharge based on a nonfrivolous speedy trial claim. The colloquies contained in the record, as noted above, just as clearly indicate that the intent of the State and the trial court in this case was to compel Ward to proceed to trial without being able to exercise his right to appeal. The question thus presented is whether the trial court acted appropriately in attempting to circumvent this court's holdings in *State v. Gibbs* and *State v. Jacques*. The answer is

no—the trial court erred in taking Ward's motion to discharge "under advisement" until after the trial was complete.

Where a defendant has the right to appeal the denial of a motion to discharge on speedy trial grounds prior to the commencement of trial, see *id.*, a necessary concomitant to that right is the right to an appropriate pretrial disposition of the motion. A refusal by the trial court to rule on the motion constitutes an effective denial of the motion, as the rights of the defendant are "significantly undermined" where appellate review of the motion is postponed. See *id.*

The question remains of how this court is to regard an action by the trial court that constitutes an effective, if not literal, denial of a pending motion. The Supreme Court of Alaska confronted a similar issue in *Broeckel v. State, Dept. of Corrections*, 941 P.2d 893 (Alaska 1997). In that case, a prisoner suing the Alaska Department of Corrections (DOC) filed motions to amend his complaint and to add his wife as a plaintiff. The trial court did not rule on the motions, but instead granted the motion of DOC to dismiss the complaint. *Id.* On appeal, the plaintiff appealed the denial of the motions, but the state argued that the appellate court should not consider the motions as they were not ruled on by the trial court. *Id.* The Supreme Court of Alaska determined:

> "Ordinarily, an appellate court does not pass on questions raised but not ruled on in the court below. . . ." 4 C.J.S. *Appeal & Error* § 220, at 299 (1993). However, "[a] ruling by implication may be sufficient to present a question for review, and . . . silence or a failure or refusal to rule may often be given the effect of a ruling, unless the matter was never brought to the attention of the court." *Id.* at 300.
>
> In this case, [plaintiff's] motions were brought to the attention of the court by [plaintiff's] written motions and supporting memoranda and DOC's written response. By granting DOC's motion to dismiss, the superior court effectively denied [plaintiff's] motions. We therefore review the superior court's implied denial for error.

*Broeckel v. State, Dept. of Corrections*, 941 P.2d at 899.

Similarly, in the present case, Ward made his motion for a speedy trial and asked the trial court for a prompt ruling on the

matter. Ward objected to the prosecutor's suggestion that the matter be taken under advisement and specifically asserted his right to pretrial disposition of his motion. When the court instead took the motion under advisement, Ward again objected and asserted his right to pretrial disposition, and then took an appeal assigning as error the trial court's failure to dispose of his pending motion. When the appeal was dismissed, Ward renewed his motion prior to the commencement of trial and again demanded a ruling. Finally, the motion was ruled upon when Ward, after trial, again renewed his motion and insisted upon a ruling. In short, Ward renewed his motion and asserted his right to a ruling at every opportunity available to him. It cannot be said that Ward failed to bring his motion to the attention of the court, nor can it be said that Ward failed to insist upon a ruling.

Instead, Ward insisted upon a ruling, but the trial court refused to rule on the motion until after the cause was determined on the merits. The trial court acted inconsistently with Ward's right to pretrial disposition of his pending motion to discharge by ordering the commencement of trial, and when it did so, Ward's motion was effectively denied.

■ Based on the foregoing analysis, we hold, prospectively, that where a motion to discharge on speedy trial grounds is submitted to a trial court, that motion is inferentially denied where the trial court proceeds to trial without expressly ruling on the motion. At that point, the denial of the defendant's motion is a final, appealable order, and the defendant must secure his or her rights to appellate review by filing a timely notice of appeal. See *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331 (1997).

This does not end our analysis, however. Based on the prospective nature of our holding, any prejudice to Ward resulting from the delay in ruling on his motion to discharge is necessarily dependent upon the merits of the underlying motion. If Ward was not, in fact, entitled to discharge of the charge against him, then he has not been prejudiced by the delay in ruling to the extent that reversal of the conviction is required in the instant case. If Ward was indeed denied his right to a speedy trial, then he would, in any event, be entitled to a vacation of his conviction and discharge of the charges against him. In other words, in order to prove that he is entitled to relief on his first assignment

of error, Ward must prove that he was entitled to discharge of the charge against him.

Consequently, any relief to which Ward might be entitled regarding his first assignment of error is necessarily subsumed in the relief afforded by his second assignment of error. Although Ward's first assignment of error has merit, it does not, standing alone, require reversal. For that, we must turn to the merits of Ward's speedy trial claims.

## STATUTORY SPEEDY TRIAL CLAIM

The information against Ward was filed on April 28, 1997. Excluding the day the information was filed, see *State v. Jones*, 208 Neb. 641, 305 N.W.2d 355 (1981), the last day on which Ward could have been tried within the statutory 6-month period was October 28, unless any period between the filing of the information and commencement of trial must be excluded, see *State v. Murphy*, 255 Neb. 797, 587 N.W.2d 384 (1998). Therefore, assuming the trial court had timely ruled on Ward's motion to discharge on or about October 30, we analyze whether the State proved by a preponderance of the evidence the existence of a period of time that is excluded under § 29-1207. That section provides, in relevant part:

> (3) If such defendant is to be tried again following a mistrial, an order for a new trial, or an appeal or collateral attack, such period shall commence to run from the date of the mistrial, order granting a new trial, or the mandate on remand.
>
> (4) The following periods shall be excluded in computing the time for trial:
>
> (a) The period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . the time from filing until final disposition of pretrial motions of the defendant . . . .

§ 29-1207.

The State argues that our speedy trial calculation should exclude the time between the filing of Ward's pretrial motions and the completion of the 30-day period allotted for the taking of depositions, as "the time from filing until final disposition of pretrial motions of the defendant." See § 29-1207(4)(a). We

have held, however, that a pretrial motion of the defendant is " 'finally disposed' " on the date that it is granted. *State v. Murphy*, 255 Neb. at 802, 587 N.W.2d at 388, citing *State v. Brown*, 214 Neb. 665, 335 N.W.2d 542 (1983). The excludable period attributable to the defendant's pretrial motions is calculated from the date the motions were filed until the date the motions were granted. See *State v. Brown, supra*. From April 30 to May 19, 1997, is a period of 20 days. Considering the 20 days of excludable time, Ward's motion to discharge on speedy trial grounds would not have had merit on October 30.

Ward's trial was further delayed, however, by his interlocutory appeal. Although the appeal was ultimately dismissed, it certainly constitutes a "period of delay resulting from other proceedings concerning the defendant," within the meaning of § 29-1207(4)(a).

It is clear that the period to be excluded due to Ward's appeal commenced on and includes October 31, 1997—the date on which he filed his notice of appeal. The date on which this period is to end presents a more difficult question. We have held, with reference to § 29-1207(3), that the 6-month period in which the State is to retry a defendant following a successful appeal is fixed by reference to the date on which the district court first takes action pursuant to the mandate of the appellate court. *State v. Kinser*, 256 Neb. 56, 588 N.W.2d 794 (1999). Our rationale for that holding was that the date of the district court's first action on the mandate was the date on which the district court had reacquired jurisdiction over the case from the appellate courts. *Id*. See, also, *State v. Belmarez*, 254 Neb. 436, 577 N.W.2d 255 (1998).

This rationale also dictates that where further proceedings are to be had following an interlocutory appeal, for speedy trial purposes, the period of time excludable due to the appeal concludes when the district court first reacquires jurisdiction over the case by taking action on the mandate of the appellate court.

The record in this case does not indicate the date on which the district court first reacquired jurisdiction over the cause. The only evidence contained in the record is a copy of the mandate of the Court of Appeals, file stamped by the clerk of the district court on March 27, 1998. This may or may not be the same date

on which the district court first took action on the mandate. For purposes of our present analysis, giving the benefit to Ward, we assume that the mandate was acted upon on March 27, as soon as it was received. The resulting period of excluded time, from October 31, 1997, to March 27, 1998, is 148 days.

Combined, Ward's pretrial motions and appeal result in an excluded period of 168 days. Counting forward from October 28, 1997, this means that the State was obliged to bring Ward to trial on or before April 14, 1998. Ward's trial began on April 13—within the 6-month period, absent excluded periods, required by the statute. Consequently, Ward's statutory speedy trial claim is without merit.

CONSTITUTIONAL SPEEDY TRIAL CLAIM

The constitutional right to a speedy trial is found in U.S. Const. amend. VI and Neb. Const. art. I, § 11. The constitutional right to a speedy trial and the statutory implementation of that right exist independently of each other. *State v. Kula*, 254 Neb. 962, 579 N.W.2d 541 (1998); *State v. Turner*, 252 Neb. 620, 564 N.W.2d 231 (1997). Determining whether a defendant's constitutional right to a speedy trial has been violated requires a balancing test in which the courts must approach each case on an ad hoc basis. *State v. Turner, supra.* This balancing test involves four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *State v. Kula, supra; State v. Turner, supra.* None of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial; rather, the factors are related and must be considered together with such other circumstances as may be relevant. *State v. Turner, supra.* See, also, *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

In the present case, Ward's trial commenced 350 days after the filing of the information against him. Of that time, however, 168 days are attributable to Ward, as calculated above. This means that the State took 182 days to bring Ward to trial. We have already determined that the length of this delay was insufficient to warrant discharge in the context of § 29-1207, and while the constitutional and statutory speedy trial rights exist

independently of one another, *State v. Kula, supra,* the statute provides a useful standard for assessing whether the length of delay before trial is unreasonable under the Constitution.

With regard to the reason for the delay, Ward has not alleged that the State intentionally sought to delay his trial. In fact, while the State may have intended to impinge on Ward's appellate rights with the suggestion that Ward's motion to discharge be held under advisement, it is evident from the record that the primary motive of the prosecutor was to *avoid* delay in bringing Ward to trial. While we do not approve of the State's tactics, this record indicates that the State did not pursue intentional delay.

Ward has not alleged that he was prejudiced by the delay before his trial. The intervening delay does not appear to have deprived Ward of the benefit of any evidence or the testimony of any defense witnesses, nor does it appear to have interfered in any other way with Ward's ability to present his defense.

The sole argument raised by Ward with reference to his constitutional claim is that the time taken on the interlocutory appeal in this case should somehow be counted against the State, because of the impropriety of the prosecutor's request that the trial court take Ward's motion to discharge under advisement.

This argument is not persuasive. The record suggests that Ward intended to appeal from the denial of his motion to discharge. Instead, Ward appealed from the taking under advisement of his motion to discharge. Had Ward appealed from a proper denial, the appellate process would still have resulted in a delay before Ward's trial. In fact, that delay would likely have been longer, as the appeal would have proceeded through briefing and argument before final disposition, instead of being summarily dismissed. Moreover, given the 20 days of excludable time attributable to Ward's discovery motions, the Court of Appeals would properly have concluded that Ward's appeal lacked merit, and the district court's determination would have been affirmed. Consequently, it is difficult to discern how Ward's position would have been altered for the better had his motion for speedy trial been appropriately ruled on before trial.

Ward's constitutional speedy trial rights were not violated in the instant case by the overall delay before his trial or by the

delay occasioned by his interlocutory appeal. Ward's constitutional speedy trial claim is without merit.

### SUFFICIENCY OF EVIDENCE

Finally, Ward claims that the evidence, viewed and construed in the light most favorable to the State, is insufficient to support his conviction. See, *State v. Larsen,* 255 Neb. 532, 586 N.W.2d 641 (1998); *State v. Hill,* 254 Neb. 460, 577 N.W.2d 259 (1998). We find this claim to be without merit.

According to the testimony of the male child victim, T.P., Ward often drank with T.P.'s mother, and Ward sometimes spent the night at T.P.'s house and slept with T.P.'s mother. One Sunday night, T.P., then 10 years old, was sitting on the living room couch watching television while his mother was passed out in the back bedroom from drinking alcoholic beverages. Ward came out of the bathroom and into the living room with his pants unzipped. Then, Ward came over to the couch and pulled down his underwear so that his penis was exposed. Ward took T.P.'s hand and placed it on Ward's erect penis.

T.P. further testified that after T.P. objected and backed away, Ward approached and pulled down T.P.'s pants. Ward touched T.P.'s penis and asked T.P. if it felt good. T.P. told Ward, "No." T.P. then told Ward to stop, and T.P. pulled up his own pants. Ward threatened to kill T.P. if T.P. told anyone about what had happened. Ward then returned to the bedroom.

T.P. testified that a short time after Ward left him alone, a friend of his mother's called on the telephone. T.P. said that he told the friend what had occurred and asked the friend to tell his mother. T.P. then went next door and borrowed a portable television from his neighbor, sat in his garage and watched television until he could hear Ward snoring, and then went to bed.

The mother's friend testified that she told T.P.'s mother about T.P.'s report on a Monday, after T.P. went to school. The mother testified that she confronted T.P. about the incident. T.P. reiterated his claim to his mother, but she did not call the police. The mother confirmed, however, that Ward had been at the house on the night in question and that she had been passed out in the bedroom, as T.P. had said. The police became involved after T.P. repeated his accusation to a counselor at his school.

Ward presented himself and one other witness in his defense. Ward testified and generally denied T.P.'s claims. The other defense witness was a 16-year-old girl, A.G., who was acquainted with T.P. through Ward, as Ward worked with A.G.'s father. A.G. testified that some time after the alleged incident, T.P. told her that he had "lied to a counselor at school to get [Ward] out of the house." The substance of T.P.'s alleged falsehood was the accusation of sexual contact.

The sum and substance of Ward's appellate claim is that the testimony of T.P. was not credible. Ward notes certain inconsistencies in T.P.'s testimony, but relies primarily on the testimony of A.G. In reviewing a criminal conviction, however, an appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence, as such matters are for the finder of fact. See, *State v. Larsen, supra*; *State v. Hill, supra.*

Having reviewed the record, we find any inconsistencies in T.P.'s testimony to be insignificant. With reference to A.G.'s testimony, the jurors evidently rejected her testimony and accepted that of T.P., and it was within their province to do so. We determine that the record, taken as a whole, is sufficient to support Ward's conviction. Therefore, his final assignment of error is without merit.

## CONCLUSION

While the trial court erred in taking Ward's motion to discharge under advisement until his trial was complete, this error, standing alone, does not warrant reversal of Ward's conviction. Ward's remaining assignments of error are without merit. Consequently, the judgment of the district court is affirmed.

AFFIRMED.

HENDRY, C.J., not participating.