STATE OF NEBRASKA, APPELLANT, V.
MICHAEL L. ROBINSON, APPELLEE.
687 N.W.2d 15

Filed September 28, 2004.    No. A-03-1451.

Stuart J. Dornan, Douglas County Attorney, James M. Masteller, and Casey J. Symonds, Senior Certified Law Student, for appellant.

Thomas C. Riley, Douglas County Public Defender, Brenda J. Leuck, and Kristin Mohrman, Senior Certified Law Student, for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

## INTRODUCTION

The State appeals the decision of the district court for Douglas County which granted Michael L. Robinson's motion for absolute discharge based on a violation of his constitutional right to a speedy trial.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 12, 2002, the State filed a complaint in the county court for Douglas County alleging that Robinson had committed first degree assault on or about February 11. A preliminary hearing was held, and Robinson was bound over for trial in the district court for Douglas County. On March 26, the

State, by and through a deputy Douglas County Attorney, filed the information charging him in the district court. On August 8, Robinson appeared with counsel before the district court and waived his statutory right to a speedy trial under the speedy trial act, Neb. Rev. Stat. §§ 29-1205 to 29-1209 (Reissue 1995).

According to the parties' briefs and the trial court's order, on September 9, 2003, a pretrial conference was held, setting trial for November 3. On September 15, Robinson filed a motion to discharge alleging that his constitutional right to a speedy trial had been violated. Following a hearing on the motion to discharge, the trial court sustained the motion and dismissed the information, finding that Robinson's constitutional right to a speedy trial had been violated. The State appeals.

## ASSIGNMENT OF ERROR

The State alleges that the trial court erred in sustaining Robinson's motion to discharge and dismissing the State's information on the ground that Robinson's constitutional right to a speedy trial was violated.

## STANDARD OF REVIEW

■ Ordinarily, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. *State v. Tucker*, 259 Neb. 225, 609 N.W.2d 306 (2000).

## ANALYSIS

■ "The constitutional right to a speedy trial is guaranteed by U.S. Const. amend. VI and Neb. Const. art. I, § 11; the constitutional right to a speedy trial and the statutory implementation of that right exist independently of each other." *State v. Feldhacker*, 267 Neb. 145, 156-57, 672 N.W.2d 627, 636 (2004). In determining whether a defendant's constitutional right to a speedy trial has been violated, the court applies a balancing test in which it approaches each case on an ad hoc basis. See *Feldhacker, supra.* In *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), the U.S. Supreme Court established the following four factors for a balancing test for determination of whether the constitutional right to a speedy trial has been violated: (1) the length of the delay, (2) the reason for the

delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. None of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial; rather, the factors are related and must be considered together with such other circumstances as may be relevant. *Feldhacker, supra.* We analyze each factor in turn.

*Length of Delay.*

Although the constitutional right to a speedy trial and the statutory implementation of such right exist independently of each other, § 29-1207 provides a useful standard for assessing whether the length of the delay is unreasonable under the Constitutions, both state and federal. See *State v. Ward*, 257 Neb. 377, 597 N.W.2d 614 (1999), *disapproved on other grounds, Feldhacker, supra.* Section 29-1207(1) provides that every person indicted or informed against shall be brought to trial within 6 months. Here, the State filed the information on March 26, 2002, charging Robinson with first degree assault. On March 27, Robinson filed a motion for discovery. On July 24, the court entered an order on the State's motion to set a pretrial conference, scheduling the conference for August 8. The information in the record does not contain the date of the actual pretrial conference. The parties' briefs and the trial court's November 21, 2003, order suggest that the pretrial conference did not occur until September 9, 2003.

On August 8, 2002, Robinson appeared before the Douglas County District Court and waived his statutory right to a speedy trial. During the hearing, the court informed Robinson that "everyone who has an Information filed against them in the District Court of Douglas County, Nebraska, or for that matter, anywhere else in the State of Nebraska, has a right to have their case tried within six months of the date that that Information is filed in district court." The court then found that Robinson "underst[ood] his rights under the Speedy Trial Act and that he freely, voluntarily, and intelligently waive[d] his rights under the Act." Robinson's motion to discharge, solely premised on constitutional speedy trial rights rather than statutory grounds, was filed September 15, 2003. According to a praecipe for subpoena found .

in our record, trial was set for November 3. However, because the trial court sustained the motion to discharge, trial never occurred.

In determining the length of the delay for speedy trial purposes, we first address whether Robinson's waiver of his statutory speedy trial right had any effect on his constitutional speedy trial right. The Nebraska Supreme Court in *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989), began by analyzing the statutory speedy trial issues, finding that the defendant had knowingly waived his statutory right and later revoked that waiver. The *Andersen* court held that "a defendant may terminate his waiver of a speedy trial by filing a written request for trial with the clerk of the court in which the defendant is to be tried" and that the time from which to determine delay begins anew once the defendant terminates the waiver and reasserts his speedy trial rights. 232 Neb. at 195, 440 N.W.2d at 211. However, in its opinion's separate analysis of the defendant's constitutional speedy trial right, the *Andersen* court found that "any delay in bringing [the defendant] to trial was occasioned by the defendant's waiver of his right to a speedy trial for strategic reasons. After [he] revoked his waiver, the case proceeded to trial in a normal manner and without unreasonable delay." 232 Neb. at 196, 440 N.W.2d at 211. Thus, the *Andersen* court evaluated the *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), factor as to length of delay by using the defendant's waiver of his statutory right to a speedy trial, albeit not directly holding that the time during which a waiver of the statutory right is operating is also time during which the constitutional right to a speedy trial cannot be said to be running or delayed. Nonetheless, as a practical matter, we see the impact of the *Andersen* court's analysis as the suggestion that during the time when the defendant's waiver was effective, he did not want a speedy trial and therefore could not be denied any constitutional right to such a trial.

In *State v. Alcaraz*, 8 Neb. App. 215, 590 N.W.2d 414 (1999), we held directly and explicitly what the *Andersen* court had only suggested by implication. In *Alcaraz*, we said that a defendant could not claim a constitutional speedy trial violation while his waiver of his statutory speedy trial right was in effect. In *Alcaraz*, the information was filed on July 1, 1996, and on

December 10, the defendant waived his statutory right to a speedy trial. We found that the defendant's waiver of his statutory speedy trial right was also effective to toll the time for the delay of his constitutional speedy trial right because "there must be consistency between state and federal rights." *Id.* at 220, 590 N.W.2d 418. Thus, we said, a defendant "cannot have the federal [constitutional] speedy trial clock running during a period when he has expressly waived his state statutory right." *Id.* Upon reflection, we perhaps should have said that while the two rights exist independently, there has to be a relationship between the two when the *Barker* balancing test is considered. Our rationale in *Alcaraz*, 8 Neb. App. at 221, 590 N.W.2d at 419, was that absent extraordinary circumstances, a "defendant's constitutional right to a speedy trial is not denied when the defendant does not want a speedy trial." We believe this conclusion to be a logical application of the U.S. Supreme Court's statement in *Barker*, 407 U.S. at 532: "We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."

On December 8, 1997, the defendant in *Alcaraz* refused to join with his codefendants in a motion for continuance, and we considered this to have been an assertion of speedy trial rights under the third *Barker* factor and a termination of the defendant's prior waiver for the purpose of assessing his federal constitutional right to a speedy trial. Therefore, because the defendant "actively asserted" his right to a speedy trial and "revoked" his waiver, we measured, for the purpose of his federal constitutional speedy trial right, the length of the delay from December 8, 1997—his reassertion of rights—to the scheduled trial date of July 27, 1998. In the instant case, there is no revocation or reassertion following the earlier waiver of the speedy trial right in the manner as directed by the Nebraska Supreme Court's decision in *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989). Moreover, there is no "reassertion" of the federal right as we found in *Alcaraz*.

The Ohio Supreme Court in *State v. O'Brien*, 34 Ohio St. 3d 7, 516 N.E.2d 218 (1987), addressed whether a criminal defendant's written waiver of his right to a speedy trial, as provided in an Ohio state statute, constituted a waiver of speedy trial rights

as guaranteed by the U.S. and Ohio Constitutions. The defendant in *O'Brien* filed a written waiver with the trial court acknowledging that by filing a motion for continuance, he was waiving his statutory right to a speedy trial, and that thus, he expressly waived such right. After he waived his statutory right, unlike the defendant in *Alcaraz, supra,* the *O'Brien* defendant did not object to any continuances sought by the prosecution. Nearly 7 months later, the *O'Brien* defendant filed a motion to dismiss, alleging that he had been deprived of his constitutional right to a speedy trial. The trial court denied such motion, and the defendant appealed.

The *O'Brien* court found that the state statute setting a time limit within which a defendant may be tried was enacted by the Ohio Legislature in order to prescribe reasonable speedy trial periods consistent with the constitutional speedy trial provisions. Thus, the court found that the statutory speedy trial provisions and the constitutional guarantees of a speedy trial "are coextensive." *Id.* at 9, 516 N.E.2d at 220. The Ohio court stated that the constitutional right to a speedy trial may be knowingly and voluntarily waived and that such waiver remains effective until there is a reassertion of the right. The court held:

> [F]ollowing an express written waiver of unlimited duration by an accused of his speedy trial rights the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection to any further continuances and makes a demand for trial, following which the state must bring him to trial within a reasonable time.

*Id.* at 9, 516 N.E.2d at 221.

Here, Robinson waived his statutory right to a speedy trial on August 8, 2002. However, unlike the defendants in *State v. Alcaraz,* 8 Neb. App. 215, 590 N.W.2d 414 (1999), and *Andersen, supra,* Robinson never "reasserted" his right to a speedy trial or "revoked" or "terminated" his waiver except to the extent that filing his motion to discharge on September 15, 2003, can be so categorized. And, the law is clear that while a motion to discharge on speedy trial grounds is pending, including in the appellate courts, the speedy trial count is stopped. See, *State v. Ward,* 257 Neb. 377, 597 N.W.2d 614 (1999), *disapproved on*

*other grounds,* State v. Feldhacker, 267 Neb. 145, 672 N.W.2d 627 (2004); *State v. Hayes,* 10 Neb. App. 833, 639 N.W.2d 418 (2002). Thus, after Robinson's waiver, there was no "delay" present in the case, whether for statutory or constitutional purposes, from August 8, 2002, when he filed that waiver, until September 15, 2003, when he filed his motion to discharge. Consequently, the length-of-delay factor clearly favors the State when Robinson's waiver is deemed to apply to the constitutional right to speedy trial. However, recognizing that support for applying the waiver of state statutory speedy trial rights to the constitutional right is skimpy at best in the reported cases, we continue our analysis under the test set out in *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)—even though the rather schizophrenic notion that a defendant can waive speedy trial under a state statute (i.e., "I don't want a speedy trial") and at the same time desire a speedy trial for constitutional purposes is troubling.

▐ In *Barker,* the Court said: "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." 407 U.S. at 530. The length of the delay in the instant case, ignoring the waiver for discussion purposes, is from March 26, 2002, to September 15, 2003—approximately 2 weeks short of 18 months. Only in *State v. Kula,* 254 Neb. 962, 579 N.W.2d 541 (1998), and *State v. Palmer,* 224 Neb. 282, 399 N.W.2d 706 (1986), has the Nebraska Supreme Court found the length of the delay to be so short as to make it unnecessary to inquire into the other three factors of the *Barker* balancing test. In *Kula, supra,* the length of the delay at issue was only 49 days, and in *Palmer, supra,* it was 17 weeks. While the *Barker* Court expressly rejected the "fixed-time" approach to the calculus of determining constitutional speedy trial issues, 407 U.S. at 529, we find, when we ignore the effect of Robinson's waiver, that we must analyze and balance all four *Barker* factors in the instant case because the delay at issue is in the range where courts have typically found the length of the delay to be presumptively prejudicial. In *Doggett v. United States,* 505 U.S. 647, 652 n.1, 112 S. Ct. 2686,

120 L. Ed. 2d 520 (1992), the Court noted that "lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." See, also, 4 Wayne R. LaFave et al., Criminal Procedure § 18.2(b) (2d ed. 1999) (citing cases wherein delays of 5, 6 to 7, and 8 months have been found to trigger need to employ balancing of all four *Barker* factors).

### *Reason for Delay.*

The trial court found that the reason for the delay was the failure of the State to bring the case to trial, which failure it characterized as negligence, citing *DeLoach v. State*, 722 So. 2d 512 (Miss. 1998), for the proposition that upon a finding that a delay was presumptively prejudicial, the burden shifts to the prosecution to produce evidence justifying the delay which persuades the court of the legitimacy of its reasons. The trial court then found that the record contained no evidence to justify the delay other than the fact that Robinson waived his statutory right to a speedy trial. As an example, we found in *State v. Alcaraz*, 8 Neb. App. 215, 590 N.W.2d 414 (1999), that the pregnancy of a deputy county attorney could be a good and sufficient reason for at least part of the delay.

The U.S. Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), stated that different weights are afforded to different reasons for delay. The *Barker* Court said, "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." 407 U.S. at 531. However, the Court found that a more neutral reason such as negligence or overcrowded courts should be weighted less heavily but still must be considered.

In the present case, at the hearing on the motion to discharge, the State's counsel explained, "The reason for the delay, it wasn't — we don't have a good reason, but we don't have a real bad reason. We weren't delaying it to prejudice [Robinson]. We were just sitting on it or not doing anything." Further, the State conceded that the delay factor "should weigh against the State, but I don't think heavily."

The primary burden to ensure that cases are brought to trial lies with the courts and the prosecutors. See *Barker, supra*. See, also, *State v. Blackson*, 256 Neb. 104, 588 N.W.2d 827

(1999). Therefore, because the State admittedly was negligent in prosecuting this case, this factor favors Robinson.

*Assertion of Right.*

■ There is some responsibility upon a defendant to assert his right to a speedy trial, but this is not to say that a defendant has a duty to bring himself to trial or to demand a trial. *Barker, supra.* The only action which Robinson took that could be seen as an assertion of his right to a speedy trial was to file his motion to discharge nearly 18 months after the information was filed. See *Doggett v. United States*, 505 U.S. 647, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992) (filing of motion to dismiss may be assertion of rights). However, by filing his statutory waiver, Robinson not only was failing to assert such right, but was indicating to the court that he did not want a speedy trial. Thus, the record shows no action taken by Robinson that may be construed as an assertion of his speedy trial right until the filing of the motion to discharge, which was not filed until after a delay had already occurred. The *Barker* Court stated, "We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. at 532. Therefore, we find that this factor weighs in favor of the State.

The trial court did not discuss or consider this factor in its application of the *Barker* test. Failure to do so was clearly wrong and particularly so in light of the fact that Robinson had waived his statutory speedy trial right—which fact at the very least emphasizes the importance of analyzing this factor to arrive at the correct result.

*Prejudice to Defendant.*

■ Prejudice should be looked at with particularity and should be assessed in the light of the three interests the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused, and (3) to limit the possibility that the defense will be impaired. *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). The last of these is the most serious. *Id.*

■ First, because Robinson was not incarcerated while awaiting trial, there is no prejudice on that account. Second, some

degree of anxiety and concern exists in every criminal case. *Morris v. Wyrick*, 516 F.2d 1387 (8th Cir. 1975); *State v. Olmsted*, 968 P.2d 1154 (Mont. 1998). However, anxiety or concern by itself does not establish prejudice where the defendant neither asserts nor shows that the delay weighed particularly heavily on him in specific instances. *Id.* And, here there is no evidence that Robinson was particularly disturbed or distressed by the pending charge.

■ Finally, there is nothing in the record showing that Robinson's defense was impaired by the delay. The trial court stated in its order that "a police report was given to the defense counsel regarding an exculpatory eyewitness on September 26, 2003. The report was prepared on February 15, 2002, which was approximately 19 months later" (we assume "later" should read "earlier"). However, we find nothing in the record to support that finding, and we conclude that such finding by the trial court was clearly erroneous. Our reason is that the basis for this finding was merely argument by Robinson's counsel at the hearing on the motion. The referenced report was not offered as evidence; nor was any witness called to testify to such fact. We have found that " '[t]he unsupported assertions of attorneys during court proceedings do not establish the facts asserted unless the other appropriate parties stipulate to such facts.' " *Schroeder v. Barnes*, 5 Neb. App. 811, 813, 565 N.W.2d 749, 750 (1997). Therefore, to the extent that the court found actual prejudice, that finding was clearly erroneous, as the record has no support for the finding. Accordingly, the record fails to support any prejudice to Robinson from the delay, and this factor favors the State.

## RESOLUTION

Because the trial court failed to consider one of the four factors set forth in *Barker, supra*, assertion of the right to a speedy trial, and because it wrongfully used matters not of record in making a finding that Robinson was prejudiced by the delay, without which finding there is no evidence of prejudice, we find that the trial court's decision was clearly wrong. Of the four *Barker* factors, the length of the delay and the reason for the delay (when we ignore Robinson's waiver) favor Robinson. The other two factors, assertion of the right and prejudice to the defendant, strongly favor the

State. When the four factors are balanced, it is clear that there was no denial of Robinson's constitutional right to a speedy trial.

## CONCLUSION

We find that there has been no violation of Robinson's constitutional right to a speedy trial under the federal or state Constitutions. Therefore, we find that the trial court clearly erred in sustaining Robinson's motion to discharge, and we reverse, and remand with directions to reinstate the charge against Robinson.

REVERSED AND REMANDED WITH DIRECTIONS.